SLIP OPINION

Cite as 2015 Ark. App. 319

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–14–970

| | |
|---|---|
| | **Opinion Delivered** MAY 13, 2015 |
| GINA METZ (formerly LANGSTON)<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. DR–09–20–A–G] |
| V. | |
| | HONORABLE JIM D. SPEARS, JUDGE |
| THOMAS LANGSTON<br>APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Gina Langston Metz and appellee Thomas Langston divorced in 2009, at which time Gina was awarded primary physical custody of their three children and $700 per month in child support from Thomas. Gina appeals the June 2014 order that reduced Thomas's child-support obligation and calculated past-due support arrearages. After conducting a de novo review, we affirm because Gina has failed to demonstrate clear error or an abuse of discretion.

In 2013, Thomas incurred health issues and fell behind on child support. In August 2013, Gina filed a motion for contempt alleging that Thomas failed to pay child support and his half of the children's medical expenses not covered by insurance, as well as a motion to

SLIP OPINION

increase child support and to modify visitation.[1]  In September 2013, Thomas filed a response, resisting Gina's motion for contempt, and countered with a motion to reduce child support due to his taking medical leave from employment and currently receiving no income.[2]

A hearing was scheduled for April 8, 2014, but the hearing was not conducted due to technical problems with the official court reporting system.  Counsel for the parties met in chambers with the trial court.  Counsel were urged by the trial court to work out the issues, but a new hearing was not requested or set.  In the intervening two months, the parties were able to resolve many outstanding issues but not the proper amount of past-due child support arrearage and current child-support obligation.  Each party sent a letter to the trial court advancing her or his respective position on what the child support obligation should be, past and present.

Gina's attorney's letter was the first sent to the trial court, dated June 10, 2014. Therein, attorney Shannon Foster stated, "Stephen Smith [Thomas's attorney] and I decided we would each send you our Orders with proposed calculations for the child support, so the Court could determine the proper child support amount and arrearage."  She provided an original and three copies of her proposed order.  In the letter, she contended that Thomas was $1,950 behind as of August 2013; that he received highly variable specified weekly income between August 2013 and April 2014 from his employer Gerdau Macsteel and from short-

---

[1]Her motion to increase child support and to modify Thomas's visitation are not before us on appeal.

[2]His response additionally asked the trial court to hold Gina in contempt with regard to visitation, but this issue is not before us on appeal.

SLIP OPINION

term disability insurance payments from The Hartford; and that a downward adjustment was made to account for the oldest child having reached majority in June 2014. Gina attached to her letter payroll documents from Gerdau Macsteel and disability benefit information from The Hartford pertaining to Thomas's benefits. Gina charted per-week child support figures, depending on actual moneys received. She contended that Thomas should pay $106 per week in child support from March 2014 forward, when Thomas was no longer receiving any income at all, reduced to $90 per week from and after the time that their oldest child graduated from high school.[3]

In her proposed order, Gina acknowledged that Thomas had histoplasmosis and meningitis, was currently unemployed, had applied for disability and appealed the denial, and had seizures that prevented him from driving. Her proposed order also conceded that "a downward modification of child support is warranted based on the Defendant's current unemployment and medical condition, as of date of filing." Gina proposed an arrearage for child support in the amount of $8,200 as of mid–April 2014, $106 in weekly child support owed from mid–April until early June 2014, and then $90 per week thereafter for the remaining two minor children. Her proposal for arrearages was for Thomas to pay $18 per week over the $90-per-week rate. In addition, her order recited that Gina would be awarded judgment for the past due amount, and "if or when the Defendant does qualify for disability and is awarded backpay, the arrearage balance at that time shall be paid from the backpay

---

[3]Gina contended that during the period of time that Thomas was not receiving any income or disability benefits, the court should impute income at a rate of $250 per week.

SLIP OPINION

amount." The orthodontic and medical costs were proposed to be ordered divided evenly; the amounts were not in dispute. Her attorney closed the letter with the statement that "Mr. Smith should be submitting his Order and child support calculations to the Court, as well."

On June 23, 2014, counsel for Thomas responded to Gina's proposal, copying Gina's attorney with this correspondence. In Thomas's letter to the trial court, his attorney noted that the major dispute was the child support arrearage amount and current child support obligation. Thomas's attorney attached an edited version of Gina's proposed precedent. The attorney's letter recited the following:

> The concern with Ms. Foster's child support calculation is that she seeks to make things complicated. Ms. Foster wants to use the Gerdau vacation payments as a means to increase Mr. Langston's child support payments before his income was limited to supplemental insurance and then went to zero. The problem with these calculations is twofold. First, child support should not fluctuate on a week to week basis; and Second, the reason Mr. Langston was receiving the larger sums was due to the fact that he had accrued vacation time and was being paid for those days he would never get to take because of his health and impending unemployment.
> The easiest way to calculate the support obligation is as your Honor indicated in chambers in Greenwood in the early spring. Mr. Langston's support of $700 per month for three (3) children should remain in place until Mr. Langston's filing (on September 24, 2013) for a downward modification. This filing for a downward modification coincides directly with Mr. Langston's dependence on supplemental insurance alone. As of March 1, 2013, [sic] Mr. Langston had no income, not even unemployment, and his support obligation should be set at a minimum, in hopes that he will receive retroactive SSI benefits to eliminate any arrearage and assist with future child support obligations for the two (2) remaining minor children.

Thomas attached his own calculation, starting with a calculated arrearage at the old child–support rate, and adding child support at a reduced rate based on Thomas's receipt of disability insurance payments. Thomas's attorney wrote that judges typically imputed $250 in net

monthly income for those with no income, which translated into $110 per month in child support for three children, lowered to $93 per month for two children. Thomas offered figures of $6,760 in total past due child support as of June 1, 2014, and ongoing child support due of $93 per month.

After reviewing the two proposed orders and supporting documentation, the trial court selected the edited order submitted by Thomas for filing, which included the following relevant findings:

> (1) that Thomas had sufficiently proven that he suffers from histoplasmosis, a medical condition that left him medically unable to work as a result of strokes, paralysis, and seizures, leaving Thomas without earned income since March 2014;
> (2) that child support should be adjusted to $110 per month for the three children from and after that date;
> (3) that child support was reduced to $93 per month due to one of the children having attained the age of majority as of June 2014;
> (4) that as of June 2014, there existed a child-support arrearage totaling $6,760;
> (5) that due to Thomas's medical conditions, it was unlikely that he would return to work;
> (6) that if Thomas qualified for and received social security disability with back pay, then the arrearage would be paid from the back pay amount and future support would be paid by disability withholding;
> (7) that the parties were responsible for one-half each of the costs of orthodontic braces for their son as well as other medical, dental, and prescription medication costs, but if Thomas was unable to pay those expenses, the costs would be added to the child-support arrearage and paid accordingly with any back-pay amounts.

This order also contained a last page, titled "Child Support Arrearage Calculation," which contained the following bullet points of information, taken directly from Thomas's attorney's correspondence:

> ★ As of May 1, 2013, Mr. Langston was in arrears in the amount of $900.00;
> ★ Mr. Langston's monthly child support payment was $700.00 per month with a one-half abatement to $350 for June of 2013 for the six (6) weeks of summer visitation with [the parties' youngest son];

⋆ As of the filing of the Counterclaim for downward modification on September 24, 2013, Mr. Langston's arrears was $4,050.00;[4]

⋆ Judge Spears advised in chambers that he would modify from the date of filing of the Counterclaim, thus beginning on October 1, 2013, Mr. Langston's only income was the $281.00 per week or $1,124.00 per month supplemental insurance payment. If you look at the Family Support Chart for three children and a net monthly income of $1,124.00, the monthly support payment is $476.00 per month;

⋆ Mr. Langston received $1,124.00 per month from October of 2013 through February of 2014 before he lost his job and his supplemental insurance. His arrears for this period is $2,380.00;[5]

⋆ The Judges in Sebastian County have traditionally looked to see if an individual is eligible for unemployment benefits, in order to calculate child support for an individual who is unemployed with no income. In this instance, Mr. Langston is medically unable to work and thus is not eligible to apply for unemployment. In these instances, the Courts have assigned a net $250.00 per month income amount to the individual paying child support with no income;

⋆ That means that for the months of March, April and May, Mr. Langston's child support payment would be $110.00 for three (3) children or a total of $330.00;

⋆ Since [the oldest child] is now eighteen (18) and has graduated from High School, Child Support can be adjusted downward to $93.00 per month on June 1, 2014;

⋆ So, Mr. Langston's total arrearage from May of 2013 through May of 2014 is $6,670.00.

In July 2014, Gina filed a "Motion to Set Aside Agreed Order," in which she argued that the trial court erroneously made assumptions about Thomas's inability to work, made an incorrect calculation of past-due support, made assumptions about whether Thomas had applied for social security disability and did not require him to apply for such benefits, and failed to abide by the requirements of Administrative Order No. 10. At that point, Gina

---

[4]Based on Gina's attorney's calculations, her arrearage figure at that time was lower, such that Thomas's arrearage figure was to her benefit as of the end of September.

[5]Gina's calculation of child support owed for this period is a few hundred dollars more, when her November 8, 2013 weekly disability income figure is corrected.

SLIP OPINION

asked for a hearing. Gina noted that although titled an "agreed" order, it was not an agreed order.

In August 2014, Thomas filed a response to Gina's motion to set aside, in which he contended that the parties had worked out most issues except that having to do with child support. Thomas contended that each party provided the trial court with proposed orders on child support for its consideration based on accompanying supportive materials, agreeing to have the trial court decide the matter on the written letter briefs. Thomas asserted that Gina did not ask for a hearing on those letter briefs and proposed precedents prior to the trial court's entry of the order on appeal.[6] He conceded that the order was not technically "agreed" but gave Gina most of the relief she requested.

The trial court denied the motion to set aside the order. A timely notice of appeal followed, wherein Gina appealed the trial court's June 2014 order and its denial of her motion to set the June order aside. In her brief, Gina presents the following points on appeal:

> 1. Should child support be set on the non-custodial parent's actual earnings and the Arkansas Family Support Chart, per Administrative Order No. 10, or an arbitrary amount without explanation for deviation?
> 2. Is Appellant entitled to due process, i.e., a hearing, so that evidence of income may be properly presented to the Court before an Order is entered?
> 3. Is the Court allowed to presume disability of a party with no medical evidence in the record, and make a reduction of child support based on that presumption?

---

[6]Furthermore, Thomas asserted in his posttrial responsive pleading that since the entry of the order, he had been approved for social security disability in July 2014 and granted retroactive benefits. He argued that Gina would be receiving current child-support based on this disability income source when she was willing to communicate with the governmental agency, and he stated his readiness to pay a substantial amount toward arrearages. The issue of the application of the social security disability benefits is not before our court in this appeal.

SLIP OPINION

4. Can child support payments and medical payments be delayed indefinitely, thus requiring one parent to bear the burden of sole support, or is this against public policy?

Gina contends that the trial court clearly erred in setting Thomas's child support obligation and its calculation of arrearages. This is the salient issue on appeal. The remaining points hold no merit, primarily because Gina consented, induced, or acquiesced to the trial court's ruling on those issues. *See Colquitt v. Colquitt*, 2013 Ark. App. 733, 431 S.W.3d 316. Regarding her contention that she was denied due process, Gina waived any right to a hearing by submitting, with consent of opposing counsel, proposed orders for the judge to sign accompanied by supportive evidence upon which both parties relied, and by failing to request a hearing until after the issues had been decided. Regarding her contention that Thomas's disability was erroneously presumed, Gina effectively conceded that Thomas was disabled and entitled to a child-support reduction in her own proposed order, submitting a reduced figure of imputed income assuming his inability to work. Gina's argument about the delay in recovering child support is not well taken because, again, even her own proposed precedent suggested that she be granted a judgment for arrearages and have an additional method to collect "if or when" Thomas was approved for disability. Any past due child support can be reduced to judgment upon request. *See McWhorter v. McWhorter*, 2009 Ark. 458, 344 S.W.3d 64 (explaining the process of having the trial court reduce past due child support to a sum certain for purposes of collection on the judgment).

The primary concern is whether the trial court's order complies with Administrative Order No. 10. Gina contends that the past-due child support calculation and the current

child-support obligation both manifest clear error, failing to explain the calculations and an alleged deviation from the Family Support Chart. We disagree.

We review child-support cases de novo on the record, but we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Stevenson v. Stevenson*, 2011 Ark. App. 552. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion, but we give a trial court's conclusions of law no deference on appeal. *Id.*

Administrative Order No. 10 includes a family support chart indicating the amount of support due depending upon the payor's income, and a trial court's order awarding child support must recite the amount of support required by the chart and recite whether the trial court deviated from that amount. *Bass v. Bass*, 2011 Ark. App. 753, 387 S.W.3d 218. It is a rebuttable presumption that the amount of child support calculated pursuant to the chart is the appropriate amount. *Black v. Black*, 306 Ark. 209, 812 S.W.2d 480 (1991). If the court deviates from the chart amount, it must include specific written findings stating why, after consideration of all relevant factors including the best interests of the children, the chart amount is unjust or inappropriate. *Bass v. Bass*, *supra*. Administrative Order No. 10 permits the trial court to impute income under certain circumstances. *Davie v. Office of Child Support Enforcement*, 349 Ark. 187, 76 S.W.3d 873 (2002). In Section III, subsection d. of Administrative Order No. 10, it recites:

> If a payor is unemployed or working below full earning capacity, the court may consider the reasons therefor. If earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a payor up to his or her earning

SLIP OPINION

capacity, including consideration of the payor's life-style. Income of at least minimum wage shall be attributed to a payor ordered to pay child support.

When the disability is not a matter of choice, however, the trial court is not required to impute income under this subsection of Administrative Order No. 10. *Davie, supra.*

Determining whether Thomas was to be imputed any income at all, and if so, in what amount, was a matter left to the discretion of the trial court. *Byrd v. Byrd*, 2012 Ark. App. 589. Here, the trial court appended an analysis of Thomas's income for child support purposes for the relevant months, recited the amount of disability benefits that would be considered "income," and applied the chart correctly to Thomas's amount of income most often received weekly from his disability insurance benefits payor.[7] The trial court was not required to match child support week-for-week but is given discretion to determine appropriate child support income in a fact-intensive inquiry. Thereafter, the trial judge made a finding of what his imputed income would be during his unemployability and calculated current child support on that amount of imputed income. Stated another way, the issue is not that the trial court deviated downward from the Family Support Chart; the issue is whether the trial court was justified in using a lower imputed income due to Thomas's health and unemployment condition when applying the Family Support Chart. This was a matter of the trial court weighing the evidence presented to it, and we hold that the trial court did not abuse its discretion in calculating the imputed income. Thus, there was no requirement

---

[7]Of the twenty-two weeks between October 1, 2013 and February 28, 2014, fifteen of those weekly payments were between $281 and $293. Five of those weeks, Thomas received less, between $0 and $241. Only two of those weekly payments were more.

to explain a deviation from the Family Support Chart because no deviation took place.

We are not left with a distinct and firm conviction that a mistake was made in this instance. *See Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). Thus, we affirm.

KINARD and GLOVER, JJ., agree.

*Foster Law Office*, by: *M. Shannon Foster*, for appellant.

*Smith, Cohen & Horan, PLC*, by: *Stepheen C. Smith* and *Jacob K. Wooley*, for appellee.