SLIP OPINION

Cite as 2017 Ark. 33

# SUPREME COURT OF ARKANSAS

No. CV–16–10

| | | |
|---|---|---|
| | | **Opinion Delivered:** February 16, 2017 |
| ERIN POTTS | APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. DR-2013-858] |
| V. | | |
| TIMOTHY D. POTTS | APPELLEE | HONORABLE JIM SPEARS, JUDGE |
| | | REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Erin Potts appeals the decree entered by the Sebastian County Circuit Court divorcing her from appellee Timothy D. Potts. She also contests the denial of her motion for reconsideration. For reversal, Erin contends that the circuit court erred by deciding the parties' property issues and modifying their agreement regarding custody and visitation without a hearing. Further, she asserts that the court erred by omitting from the decree their agreement for Tim to move to Northwest Arkansas. We agree that the circuit court erred in depriving the parties of a hearing on the issues in dispute, and we reverse and remand.

The record reflects that Erin and Tim married in January 2010 and separated in September 2013. The union produced one child, a daughter, J.P. Tim filed a complaint for divorce in October 2013 seeking joint custody of J.P. and an equitable distribution of the parties' assets and liabilities. Erin answered the complaint and also filed a counterclaim

for divorce. She sought sole custody of their daughter and that Tim be required to pay child support. Erin also asked for the circuit court to determine their property rights and the allocation of their debts, unless otherwise agreed upon by the parties. Tim subsequently filed an amended complaint alleging that he should be awarded custody of the child. He also claimed that he had acquired a home before the marriage and that it should be awarded as his separate, nonmarital property. In December 2013, the circuit court entered an order granting Erin temporary custody of J.P., setting Tim's visitation, and requiring him to pay child support.

The circuit court scheduled a two-day, final hearing to begin on July 29, 2014. Prior to that date, Erin filed a motion for continuance, citing discovery problems. The circuit court heard this motion and denied it. In its ruling, the court assured the parties that the case did not have to be concluded at that time and that it would "continue on" until they rested their cases.

At the hearing on July 29, the parties announced that they had settled the custody issue, and they stated their agreement on the record as follows. They agreed to share joint custody of J.P. by alternating custody of her on a weekly basis. Their settlement included the right of first refusal to care for the child when the parent exercising custody could not keep her. The parent who surrendered his or her time with the child would have the right to make up that lost time. Because Tim is a school teacher, they agreed that he would be allowed to make up his unspent time during school breaks, holidays, and summer vacations. Overnight visitation on Friday evenings during Erin's week was also stated as an option. Exercising the right to make up lost time was conditioned upon it not interfering with

previously established plans. The parties were to mutually agree on a daycare facility at the midpoint between their residences that would serve as the location for exchanging the child. The parties were also to make an effort to live in the same school district. In this regard, Tim was to make a good-faith effort to move to Fayetteville, but if he could not do so or if it was not affordable, then Erin was to make a good-faith effort to relocate to Rogers. Further, the parties agreed "that if at any time the Court finds by a preponderance of the evidence that one parent demonstrates a pattern of willfully creating conflict in an attempt to disrupt the current pending joint custody arrangement, then the Court may deem such behavior as a material change of circumstances and may change joint custody to an order of primary custody to the non-disruptive parent."

With the permission of the circuit court, the parties reserved the property issues, and they agreed to work on a settlement. Tim offered testimony to establish residency and his grounds for divorce. The circuit court stated that it would sign a decree approved by the parties.

A decree had not been entered by November 4, 2014. On that date, Tim filed a motion to modify the joint-custody arrangement. He alleged that Erin had been uncooperative and had repeatedly shown bad faith by ignoring, denying, or delaying nearly all of his requests to make up lost time. Tim also asserted that Erin had required him to pick up J.P. at her home as opposed to the daycare center, which reduced his time with J.P. He claimed that he was entitled to sole custody of J.P. pursuant to their agreement, and he submitted his affidavit in support of his accusations. In her response to the motion, Erin denied Tim's allegations and asserted that it was Tim who had consistently attempted to

create conflict and disagreement. She maintained that Tim was dissatisfied with the terms of the agreement because she had been keeping J.P. while Tim was at work.

In conjunction with her response, Erin, through her counsel, wrote a letter to the circuit court dated November 13, 2014. She stated that the problems the parties were encountering concerned her tardiness in dropping off J.P. at daycare and their inability to agree upon Tim's additional time with the child. A proposed decree to address those difficulties was attached to the letter. Erin indicated that she objected to the settlement of the property issues as contained in a proposed decree drafted by Tim and noted that her proposal included an order for them to enter into settlement negotiations for ninety days, and if that failed, for them to enter mediation.

Tim's counsel responded with a letter to the circuit court, stating that the parties had agreed for Tim to draft a decree setting out the custody agreement and containing an offer for the division of property and debts. Tim complained that Erin had not indicated why the proposed property settlement was not satisfactory and that he had not received a counteroffer from her. He indicated that the decree proposed by Erin did not accurately reflect the custody agreement. In addition, he objected to mediation and advised that if they could not reach a settlement of the property issues, the court could hold a brief hearing. Tim also requested a hearing on his motion to modify the custody agreement.

On November 21, 2014, the circuit court wrote a letter advising the parties that it was setting aside the parties' agreement regarding the right of first refusal because it had "become too cumbersome." The court also stated that if the parties did not settle the property dispute within ten days, the marital home and its contents would be sold and the



proceeds divided equally. Also, by an order entered on November 24, 2014, the circuit court granted Tim sole custody of J.P. Although no hearing had been held, the court found that Erin had "repeatedly ignored, denied, or delayed the Plaintiff's request to make up time with the parties' minor child as was required by the parties' agreement."

In response to the circuit court's letter ruling regarding the sale of the home, Tim's counsel wrote another letter to the court stating that the home had been owned by Tim before the marriage. Tim indicated that he had purchased the property for $129,000 and that he had applied a $10,000 gift from his grandfather toward the purchase price. Tim also informed the court that the balance of the mortgage was $108,000. He attached an appraisal of the property and claimed that the home had decreased in value, and he noted that it was Erin's burden to prove that the home had increased in value. Based on this information, Tim asked the circuit court to reconsider its letter ruling.

Erin's attorney responded with a letter dated November 26, 2014:

> Please consider this letter a request that you allow the parties an additional ten (10) days to try and resolve any outstanding property issues. The Defendant would further request that the court not piecemeal the property issues as requested by the Plaintiff. With regard to the change in visitation referenced in the Court's letter, the Defendant would request that the Court refrain from making any modifications to prior rulings until evidence has been presented. At this point, there has been much hearsay in the lengthy letters and pleadings filed by the Plaintiff. There has been no actual proof presented to the Court that the parties have not been getting along or that it is the fault of the Defendant. It is clear that the Plaintiff is dissatisfied with the fact the Defendant has been able to watch the minor child during the day. Essentially, Plaintiff is telling the Court that the parties cannot get along so he should get exactly what he wanted in the first place. Keep in mind that the Plaintiff is not losing any time with the parties' child while the Defendant is keeping her during the day. Again, the Defendant is requesting that the Court only consider evidence properly before the Court and is objecting to the introduction or consideration of any of the items the Plaintiff has attempted to introduce through letters to the Court or attachments to pleadings.

The Defendant respectfully requests that the Court set this matter for a hearing so that any decision to modify this Order be based upon actual facts and evidence rather than hearsay propounded by the Plaintiff. Thank you for your time and consideration regarding this matter, and I hope we are able to have a hearing in the near future so that these misunderstandings might be resolved.

The circuit court authored another letter on December 10, 2014, which set a date of no later than December 19, 2014, for the parties to reach an agreement. The court observed that Tim had purchased the home prior to the marriage but ruled that Erin would be entitled to equity resulting from the reduction of principal by the expenditure of marital funds. The circuit court also found that Erin was not entitled to any increased value given the current market value, unless marital funds had been used for improvements made to the property.

On January 27, 2015, Tim's counsel wrote a letter to the court and attached two proposed decrees. One version ordered the sale of all personal property. Counsel indicated that the other, preferred, version contained what Tim had agreed upon, and he represented that it was "very close" to the only proposal received from Erin. In the letter, Tim identified four disputed items of personal property that he was claiming and submitted a thank-you note from his parents to support his contention that he should be awarded one of the items, noting that Erin would receive a dresser that had been a gift from Erin's aunt. Tim also stated that his parents had contributed $6,000 toward the vehicle Erin was driving and that despite this substantial gift to him, Erin would be awarded the vehicle in the proposed decree. Although Tim said that this particular award would result in Erin's receiving far more in value than he would, he stated that he would agree to this disposition if the decree were accepted by the court. He explained that the preferred version of the decree also

SLIP OPINION

divided the parties' debts, representing that to his knowledge, Erin did not dispute the amount of the debt or that he had been servicing their debt. Tim also attached an amortization schedule to support his calculation of Erin's share of the reduction in principal on the home.

On February 4, 2015, the circuit court entered the decree preferred by Tim. Erin filed a timely motion for reconsideration and to modify the decree. She argued that the decree contained multiple provisions that had not been agreed upon by the parties and for which no testimony had been taken. She asked the circuit court to set aside the custody provisions and to enter a decree to reflect the parties' custody agreement. Erin also asserted that the court should set aside the provisions relating to the division of marital property and set a hearing. Finally, Erin argued that the court should modify the decree to allow her to exercise visitation during spring break in 2015 because the decree allowed Tim a continuous period of custody for twenty-two days. In response, Tim argued that the decree did not designate spring break as a visitation period for either party because their agreement contained specific arrangements for the holidays of Easter and Pascha, which were likely to interfere with spring break. Further, Tim asserted that Erin had ample opportunity to present countervailing proof but that she had failed to do so. Tim also filed a motion to modify the decree to include a provision for visitation on Halloween.

By order dated February 23, 2015, the circuit court denied Erin's motion for reconsideration. The court found that "based upon the testimony of the parties and the statements of counsel at the July 24, 2014 hearing and based upon the Court's review of letters from counsel and the pleadings in this case, there is sufficient evidence to support the

Court's entry of the Decree of Divorce as entered on February 4, 2015." The court modified the decree to include Halloween visitation. The circuit court also found that "the parties did not intend that either party be awarded Spring Break visitation."

Thereafter, Erin filed a timely notice of appeal from the decree and the order denying reconsideration. On March 2, 2015, the circuit court entered an order denying reconsideration and modifying the decree identical to the one filed on February 23, 2015. The only difference between the two orders is that the March order included the attorneys' signatures under the statement "Agreed as to Form and Content." Erin filed an amended notice of appeal to include a review of this order.

The appeal was first heard by the court of appeals, which affirmed that portion of the decree dividing the parties' property and their debts, but reversed and remanded on the issue of custody. We accepted Erin's petition for review. When this court grants a petition for review, we treat the appeal as if it had been originally filed in this court. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227.

*Division of Property and Debts*

Erin argues that the circuit court's findings on the division of property and debts are clearly erroneous because the circuit court did not conduct a hearing and thus had no evidence upon which it could have properly made those decisions. She contends that the circuit court's findings are based solely on statements of Tim's counsel found in letters written to the court. Erin points out that she objected to the court's consideration of the letters as evidence and that she made requests for the circuit court to hold a hearing to resolve these issues.

With respect to the division of property in a divorce case, we review the circuit court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Conlee v. Conlee*, 370 Ark. 89, 257 S.W.3d 543 (2007).

We agree with Erin that the circuit court erred in accepting Tim's version of facts and events in dividing the parties' property and debts. Just as statements made by attorneys during a trial are not evidence, *Union Pac. R.R. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997), counsel's statements of the kind here cannot be regarded as evidence upon which to make findings of fact and conclusions of law. This was not a case where the parties agreed to submit disputed issues to a court for resolution based on stipulations, briefing, or letters. For instance, in *Metz v. Langston*, the parties agreed to present a contested issue to the circuit court for decision based on letters, briefs, proposed orders, and supporting documentation offered by their counsel. *Metz*, 2015 Ark. App. 319, 463 S.W.3d 305. When the court accepted the husband's proposed order, the wife filed a motion for reconsideration and asked for a hearing. The wife appealed the denial of her motion, asserting that she had been denied due process. The court of appeals found no merit in the argument, holding that the wife had waived any right to a hearing by agreeing to submit proposed orders for the judge to sign accompanied by supporting documentation and by failing to request a hearing until after the issues had been decided. By contrast, here, the parties did not agree for the circuit court to decide the case in this fashion. On the contrary, Erin objected to proceeding in

this manner and requested a hearing prior to the circuit court's decision. We hold that a circuit court may not resolve contested factual issues by dispensing with a hearing and accepting the position offered by one party over the other party's objection.

We are cognizant of Tim's argument that Erin has failed to demonstrate prejudice resulting from the circuit court's rulings because she has not shown that its findings are erroneous. However, the circuit court's decision is clearly erroneous because it is not based on evidence properly introduced at a hearing. In this situation, a party in Erin's position is hard-pressed to make such a showing without having been afforded a hearing to present evidence. To hold otherwise would excuse the circuit court's having decided contested issues without a hearing. This we will not do.

Tim further contends that Erin acquiesced in the action taken by the circuit court because her attorney approved the "form and content" of the March order denying her motion for reconsideration. Again, we disagree. In our view, the signature under that designation represents a statement that the order accurately reflects a circuit court's ruling. It cannot be construed as the equivalent of an agreed order.

*Custody*

Along the same lines, Erin contends that the circuit court erred by modifying custody and visitation without a hearing. For the reasons discussed above, we also hold that the circuit court clearly erred by rendering decisions regarding custody and visitation without a hearing. It is particularly troublesome that the circuit court would deny the parties an opportunity to present evidence regarding custody, which is an issue that requires the court

to determine what is in the best interest of the child.  We therefore reverse on this point as well.

Reversed and remanded; court of appeals' opinion vacated.

*Brent D. Watson, Attorney at Law, PLLC*, by:  *Brent D. Watson*, for appellant.

*Medlock, Gramlich & Sexton, LLP*, by:  *Sam Sexton III*, for appellee.