Cite as 2022 Ark. App. 184

# ARKANSAS COURT OF APPEALS
DIVISION
No. CV-21-191

| | |
|---|---|
| | Opinion Delivered April 27, 2022 |
| AMY DRUMMOND APPELLANT | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 24ODR-19-11] |
| V. | |
| ROGER DRUMMOND APPELLEE | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

Appellant Amy Drummond and appellee Roger Drummond were divorced by decree entered by the Franklin County Circuit Court. Amy appeals, arguing that the trial court abused its discretion in its marital-property division; specifically, she maintains that the trial court clearly erred in its valuation of the parties' business, Roger Drummond Trucking, LLC ("RDT"). We affirm.

I. *Background*

The parties were married in 2005 and separated in January 2019. Amy filed for divorce, and Roger filed an answer and counterclaim seeking divorce. Following a hearing, the trial court instructed both parties, in lieu of closing arguments, to submit proposed

orders with detailed findings of fact and conclusions of law and stated that it "may just sign one of them." Ultimately, the trial court entered Roger's proposed order.

The decree provides that Amy is awarded primary custody of the parties' teenage daughter, R.D. Imputing minimum-wage income to Amy, the trial court found that her monthly income is $2,461, and the trial court noted that she also receives $689 a month in benefits for R.D. The trial court found that Roger, who is self-employed, has gross monthly income of $10,947.89 for child-support purposes. With the understanding that Roger pays $345 a month for R.D.'s health insurance, the trial court ordered him to pay Amy $1,008 in monthly child-support payments. The trial court found that the parties own two pieces of real property. The trial court ordered that the marital home on Wandering Way, which has a current debt of $105,000, be sold and the proceeds split equally after paying off the indebtedness. The trial court ordered that the parties retain as tenants in common a trailer on Watalula Road that sits on two acres. The trial court noted that this property is under a rent-to-own contract and ordered the parties to split equally the $500 monthly rental payments until the balance is paid in full.

As noted from the outset, the focus of this appeal is on the parties' trucking business, RDT. In paragraph eleven of the decree, the findings and conclusions related to RDT's valuation and division are as follows:

> The Court finds that the parties' [sic] own a business formed during the marriage, [RDT]. The Court must establish a fair market value of the business. *See Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003) ("Arkansas law requires the use of the 'fair market value' standard for valuing businesses in a marital property context."). As an initial matter, it is evident that this business is entirely derived from

2

trucking routes provided by Drummond Trucking, Inc.[,] a business owned and operated by [Roger]'s parents. Drummond Trucking, Inc. does not have this type of arrangement with any other companies. [RDT] also does not have any long-term contracts with Drummond Trucking, Inc. In accordance with established law in the State of Arkansas, "for goodwill to be marital property, it must be a business asset with value independent of the presence [or] reputation of a particular individuals [sic]—an asset which may be sold[,] transferred, conveyed or pledged." *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). It is clear that [Roger]'s personal goodwill is not marital and does not contribute to the fair market value of the company. A buyer would not be able to purchase this goodwill. Furthermore, the testimony of both parties indicated that [Roger] does not have legal title to either of the Peterbuilt [sic] trucks that the company runs. The trucks are being leased from Drummond Trucking, Inc. and must remain legally titled to Drummond Trucking Inc. in order for [RDT] to be able to operate. The trucks cannot legally run under [RDT]. [Amy]'s counsel argued this fact, but [Amy]'s own testimony acknowledged that [Roger] must run the trucks under Drummond Trucking, Inc.'s authority. [Amy] also did not take any action to have Drummond Trucking Inc. or its owners made parties to this action.

The Court finds that the marital business has a total value of $80,000.00. This finding is based on the above facts and the testimony of the parties. The parties presented competing valuations of the company. [Amy] did not provide any specific number to the Court as to what she believed the company's value to be, but indicated it would be worth the value of the marital home, which she testified might be worth approximately $105,000.00. [Amy] acknowledged that she had essentially no involvement in the business nor experience [in] the industry. [Amy] provided little to no evidence to support her valuation of the business. Her basis appears to primarily rely on the gross revenues of the business. This is not the proper way to calculate the fair market value of the company, particularly given the company's reliance on [Roger]'s personal good will. [Amy]'s counsel also argued that the Court should value the Peterbuilt [sic] trucks based on their purchase price of $70,000.00 each, [but] this is also not the proper way to calculate fair market value. The trucks have had hundreds of thousands of miles logged on them, and their values are undoubtedly much lower now. In short, the Court finds that to the extent [Amy] offered a valuation of the company[,] it was not sufficiently supported by evidence or reason.

[Roger] established that he ran the business operation from its inception and had over a decade of experience in the industry; as such he certainly has more knowledge of the business and expertise of the industry than [Amy]. He provided credible testimony regarding the value of the business's present assets. The Court recognizes that [Roger] has the requisite knowledge and experience to value these assets; and certainly, provided the most reliable evidence in the record. One could

reasonably conclude that because of the nature of the verbal lease to own agreement between [Roger] and Drummond Trucking Inc., the Peterbuilt [sic] trucks add nothing to the fair market value of [RDT]. But the Court notes that [Roger]'s valuation included the value of the "equity" the business has in the Peterbuilt [sic] trucks owned by Drummond Trucking Inc. based upon the remaining balance to be paid on the verbal lease to purchase agreement and the present value of the trucks. In short, the Court finds [Roger]'s valuation of the assets to be credible, substantiated, and fair. These assets are all that can be sold of the business and therefore are the proper measure of the business's fair market value. [Roger] testified that based on these considerations, the present value of [RDT] is approximately $80,000.00. For the reasons stated herein, the Court accepts this valuation.

The trial court awarded RDT to Roger but ordered Roger to pay Amy $40,000 for her one-half interest in the marital business. The trial court also ordered that the parties come to an agreement on personal property, or the items will be sold and the proceeds split equally. The trial court addressed Roger's removal of $45,000 from the business account for which Amy was seeking one half. The trial court found that Roger had returned $39,000 to the account the following month and that Amy's one half of the remainder of those funds had already been paid directly to her, so her request for $22,500 was denied, and the issue was declared moot because the trial court had already addressed the division of the business. The trial court found that each party would be responsible for his and her own debts. The trial court denied Amy's request for spousal support on the basis that she had failed to establish a need.[1] The trial court noted that Amy had been living with her boyfriend since December 2019, which would generally result in the termination of alimony. The trial court

---

[1]Amy does not specifically challenge the denial of spousal support, other than to argue that the trial court should have granted an unequal division of property based, in part, on the disparity in the parties' incomes.

also found that the boyfriend had provided some financial support for her; that Roger had already paid Amy support for twenty months pursuant to a temporary order; and that Amy works full time making approximately $2,400 a month plus child support and is being awarded substantial additional funds through the property division. Finally, the trial court denied Amy's request that Roger be held in contempt and denied her request for attorney's fees, noting that Roger had already paid $2,500 for her attorney's fees.

After entry of Roger's proposed decree, Amy filed a posttrial motion for reconsideration on the basis that she thought that the trial court had been joking about "picking" one of the parties' decrees. She argued in her motion—without citation to any authority—that "decree-picking" results in an inequitable distribution in favor of the "winning" party whose decree is picked.[2] After the motion was deemed denied, Amy filed a notice of appeal from the divorce decree and the denial of her motion for reconsideration.

## II. *Standard of Review*

On appeal, we review domestic-relations cases de novo but will not reverse the trial court's findings of fact unless they are clearly erroneous. *Vaughn v. Vaughn*, 2021 Ark. App. 394. Clearly erroneous means that the reviewing court, on the entire evidence, is left with

---

[2]The trial court did not simply pick a proposed order to sign. *See Potts v. Potts*, 2017 Ark. 33, 512 S.W.3d 611 (holding that a trial court may not resolve contested factual issues by dispensing with a hearing and accepting the position offered by one party over the other party's objection); *Metz v. Langston*, 2015 Ark. App. 319, 463 S.W.3d 305 (holding that the wife waived any right to a hearing by agreeing to submit proposed orders for the judge to sign accompanied by supporting documentation and by failing to request a hearing until after the issues had been decided). Here, the trial court held a hearing, and both parties expressly agreed to submit proposed orders based on the evidence presented at the hearing.

the definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the trial court's determination of the credibility of the witnesses and the weight to be given to their testimony. *Norwood v. Norwood*, 2020 Ark. App. 345, 604 S.W.3d 252.

The trial court in a divorce case has broad powers to distribute the property to achieve an equitable division. *Vaughn*, *supra*. The trial court is vested with a measure of flexibility in apportioning the marital assets, and the critical inquiry is how the total assets are divided. *Banks v. Banks*, 2019 Ark. App. 166, 574 S.W.3d 187. The overriding purpose of the property-division statute, Ark. Code Ann. § 9-12-315 (Repl. 2020), is to enable the court to make a division that is fair and equitable; the statute does not compel mathematical precision in the distribution of property. *Id.* We will not substitute our judgment on appeal as to the exact interest each party should have; we will decide only whether the order is clearly wrong. *Id.*

III. *Discussion*

Amy argues that the trial court clearly erred in the valuation of RDT because it found that most of the value was derived from Roger's personal goodwill. Amy does not argue that goodwill was an inappropriate consideration in the valuation of a nonprofessional business.[3]

---

[3]*Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227 (declining to answer the issue of whether personal goodwill could be found in the valuation of a nonprofessional business, as opposed to a professional business); *Wilson v. Wilson*, 294 Ark. 194, 205–06, 741 S.W.2d 640, 647 (1987) (holding that whether goodwill is marital property is a factual question and that a party, to establish goodwill as marital property and divisible as such, must produce evidence establishing the salability or marketability of that goodwill as a business asset of a professional practice).

Rather, she contends that the documentary evidence showed that the business was worth much more than $80,000. Tax returns indicated that the business had a net income of $128,415 in 2017; $173,777 in 2018; and $157,108 in 2019. Moreover, the 2019 tax return indicated that the business had assets worth $301,067. According to Amy, the trial court simply took Roger's word that the business was worth only $80,000. Amy asserts that the trial court committed "obvious error" and that the trial court even admitted its error at a subsequent hearing when the court said that it was "almost inclined" to set aside the decree for miscarriage of justice "on [its] own initiative."[4]

Arkansas law requires the use of the "fair market value" standard for valuing businesses in a marital-property context. *Cole v. Cole*, 82 Ark. App. 47, 54, 110 S.W.3d 310, 314 (2003). There are several possible approaches to business valuation, including income, asset, and market. *See, e.g.*, *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15. Here, neither Roger nor Amy hired an expert to perform a valuation of RDT. Amy's argument on appeal is essentially about the weight that the trial court gave Roger's testimony versus the weight it gave three years of income tax returns; however, we do not reweigh the evidence. *Norwood*, *supra*.

The trial court had before it Roger's testimony based on his personal knowledge and experience in the trucking industry and the parties' income tax returns from 2017 through 2019 from which to determine the fair market value of RDT. We cannot say that the trial

---

[4]We will not ascribe meaning to the trial court's statement that it was "almost inclined" to set aside the decree given that the trial court did not ultimately set it aside.

court clearly erred in finding that RDT is worth $80,000 given that the two Peterbilt trucks and the trucking routes cannot be sold as part of RDT because these assets were provided by Roger's parents as a handshake deal with their son. As the appellant, Amy has the burden of demonstrating clear error on the trial court's part, and she has failed to show that the trial court clearly erred in finding that RDT's value is $80,000.

Next, Amy argues that, even if the trial court properly valued the business, it erred in not making an unequal division of the marital assets. Arkansas Code Annotated section 9-12-315(a) provides that, at the time a divorce decree is entered, all marital property shall be distributed one half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a)(1). In that event, the court shall make some other division that the court deems equitable taking into consideration the following factors:

> (i) the length of the marriage; (ii) age, health, and station in life of the parties; (iii) occupation of the parties; (iv) amount and sources of income; (v) vocational skills; (vi) employability; (vii) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (viii) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (ix) the federal income tax consequences of the court's division of property.

Ark. Code Ann. § 9-12-315(a)(1)(A).

When property is divided pursuant to the foregoing considerations, the trial court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order. Ark. Code Ann. § 9-12-315(a)(1)(B). Here, there was no need for the trial court to make findings on the factors listed in section 9-12-315(a)(1)(A) because the trial court made as near an equal division of the

8

marital property as was possible. Therefore, the divorce decree is presumptively fair and equitable.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Daniel Stewart*, for appellant.

*Bradley D. Hull*, for appellee.