Elwin HOOVER *v.* Gae Von HOOVER

CA 99-944                                    16 S.W.3d 560

Court of Appeals of Arkansas
Division I
Opinion delivered May 10, 2000

*Eddie N. Christian Law Office,* by: *Eddie N. Christian,* for appellant.

*Ledbetter, Cogbill, Arnold, & Harrison, LLP,* by: *Ronald D. Harrison* and *Virginia C. Trammell,* for appellee.

WENDELL L. GRIFFEN, Judge. Appellant Elwin Hoover and appellee Gae Von Hoover were divorced by a decree entered May 18, 1999. The chancellor divided more than $1,500,000 in marital property between the parties and awarded appellee $2,000 per month alimony for a period of ten years. He also awarded appellee custody of the couple's two minor children and ordered appellant to pay $3,500 per month child support. On appeal, appellant argues that the property division was inequitable and that the chancellor erred in calculating his income for the purpose of the support awards. We agree that the chancellor erred in dividing the couple's marital property and therefore reverse and remand the case.

Appellant and appellee were married in 1982. For the great majority of the marriage, appellee did not seek outside employment but, by agreement with appellant, remained at home to take care of the house and the children. Meanwhile, appellant pursued a career

in the oil and gas industry. By the early 1990s, he had become the very successful owner of Hoover Oil & Gas, Inc., and the part owner of a related operating company, Hoover/Wilson Exploration & Production, Inc. According to appellee, the couple had an average yearly income of $500,000 between 1995 and 1998. They enjoyed a lavish lifestyle that included a $700,000 home, three luxury vehicles, a boat, a condominium, jewelry, and various parcels of real property.

In 1996, the appellant and appellee separated temporarily. During this time, appellant met with several financial difficulties. First National Bank, which had made a $1,670,000 loan to Hoover Oil & Gas, restructured the loan in the fall of 1997 to require payments of $33,000 per month. According to loan officer James Fourmy, the loan was undercollateralized, and no payments had been made toward reducing the principal. Around the same time period, appellant discovered that an employee of Hoover/Wilson had embezzled a substantial amount of funds belonging to other persons. Additionally, appellant and appellee, while briefly reconciled, obtained a $400,000 mortgage on their home at appellant's suggestion. According to appellant, he used $300,000 of the funds to pay business expenses and $100,000 to repay the embezzled funds. Appellee claims that $300,000 of the money was used to finance several unsuccessful drilling projects.

Shortly after obtaining the mortgage, appellant left the marital home, and the parties remained separated. Appellant became more concerned about his financial situation and decided to sell some of his producing wells. The largest sale involved what were known as the Greasy Creek wells, which brought a price of $972,479.84. Another sale, called the Vastar sale, generated $423,336.59. The proceeds of these sales and two smaller sales were dedicated to First National Bank, thereby reducing the Hoover Oil & Gas debt to $156,106. These sales substantially reduced the number of the company's producing wells.[1]

In April 1998, appellant sued appellee for divorce. It was agreed that appellee would receive custody of the children. However, the parties disagreed about the division of marital property, the amount of child support that appellant should pay, and whether appellee was entitled to alimony. Therefore, a trial was held on

---

[1] The extent of the reduction is unclear. It appears that, at its height, Hoover Oil & Gas operated seventy-nine producing wells. After the 1998 sales, the number was reduced to either thirty-seven or fifteen, depending upon which trial exhibit is referenced.

these issues. Following a two-day hearing, the chancellor issued a detailed letter ruling and a decree in which he made an unequal division of the property in appellee's favor, awarded her $2,000 per month alimony for ten years, and ordered appellant to pay $3,500 per month child support. Appellant filed a timely notice of appeal from the chancellor's ruling.

■ We note at the outset that chancery cases are reviewed *de novo* on appeal. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). However, we will not reverse a chancellor's findings of fact unless they are clearly erroneous. *Id.* We will defer to the superior position of the chancellor to judge the credibility of the witnesses. *Id.*

■ We address first appellant's contention that the chancellor erred in dividing the parties' marital property. Arkansas law provides that, at the time a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. Ark. Code Ann. § 9-12-315(a) (Repl. 1998). In the event the court finds that an equal division would be inequitable, it shall make some other division that it deems equitable, taking into consideration the many factors set forth in Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 1998), which include length of the marriage, the age, health, and station in life of the parties, and each party's occupation, sources of income, and vocational skills. The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 443 (1990). A chancellor's unequal division of marital property will not be reversed unless it is clearly erroneous. *See Franklin v. Franklin*, 25 Ark. App. 287, 758 S.W.2d 7 (1988).

In his letter ruling, the chancellor set out an item-by-item recitation of the marital assets and debts assigned to each party. Appellee was awarded, free of debt, the couple's marital home, two vehicles, and other items with a total value of $917,406. Appellant was awarded the assets of Hoover Oil & Gas, valued at $421,642, an additional $210,821 enhancement to the company's value, the remainder of the couple's real property, and various other items with a total value of $1,319,514. Appellant was also assigned over $700,000 in debt, which included the $371,093 remaining mortgage on the marital home. His net award was therefore $618,998, or approximately forty percent of the marital property.

The chancellor's decree, entered the same day as his letter ruling, disposed of some additional items such as sports tickets and a country club membership not mentioned in the letter. These items have some value, but their worth is negligible compared with the overall property owned by the parties. However, one significant item that was mentioned in the decree was not mentioned in the letter ruling — the $156,106 debt owed by Hoover Oil & Gas to First National Bank. In the decree, the debt is assigned to appellant. However, it is not included in the mathematical calculations in the letter ruling.

Appellant argues that the chancellor, in his letter ruling, obviously intended to divide the property 60/40 between the parties, but, due to several errors, the actual division was much more unequal. In particular, he contends that the assets assigned to him are much less valuable than they appear because the chancellor failed to reduce the worth of Hoover Oil & Gas by the $156,106 debt owed to First National Bank and because the chancellor arbitrarily added a 50% enhancement ($210,821) to the value of Hoover Oil & Gas. We agree that the chancellor erred on both counts.

To prove the value of the Hoover Oil & Gas assets at trial, appellee presented the testimony of CPA Matthew Scott James. James testified that, assuming the company's wells continued to produce, their value was approximately $2.1 million. However, he admitted that he did not conduct engineering studies which are customary in valuating wells, and he admitted that in arriving at his figure, he included wells that the company had already sold. In fact, he said that he was not purporting to tell the court the value of Hoover Oil & Gas, Inc., but was attempting to provide a "snapshot" of a particular part of the business. There is nothing in any of the chancellor's findings to indicate that he gave any credence to James's valuation. Instead, it appears that in arriving at a value for Hoover Oil & Gas, the chancellor relied on appellant's expert, petroleum engineer Tom Alexander. Alexander valued the company's well reserves at $421,074.95. This valuation was apparently used by the chancellor, with a small correction, in arriving at the figure of $421,642 listed in the letter ruling as the value of Hoover Oil & Gas. Appellant has no quarrel with this value other than his claim that is should be reduced by the $156,106 owed to First National Bank.

■■ A chancellor's valuation of property for purposes of property division will not be reversed unless it is clearly erroneous.

*See Vestal v. Vestal,* 28 Ark. App. 206, 771 S.W.2d 800 (1989). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Adkinson v. Kilgore,* 62 Ark. App. 247, 970 S.W.2d 327 (1998). We are firmly convinced that a mistake was committed on this point. The chancellor's letter ruling was a worthy attempt to clarify and explain the matters in the accompanying decree and to set out, mathematically, the ultimate division of property between the parties. However, the letter ruling makes no mention of the $156,106 debt. The debt was not mentioned either in assessing the value of Hoover Oil & Gas, nor in the listing of debts assigned to appellant. By inadvertently failing to consider this large amount as part of his mathematical calculations, the chancellor's valuation of the company's assets, as assigned to appellant, was erroneously inflated.

We also agree with appellant that the chancellor erred in assigning $210,821 in enhanced value to the worth of Hoover Oil & Gas. That amount is precisely 50% over and above the $421,642 value the chancellor assigned to the company. Even though neither party asked the chancellor to place an enhanced value on the company's assets, the chancellor explained in his letter that "Elwin Hoover's testimony regarding actual sales indicated a 50% higher sales price when compared to the [value estimates made by Tom Alexander]." The chancellor was referring to the four sales that Hoover Oil & Gas made for the purpose of reducing its debt to First National. Exhibits in the record show that the properties had the following values and sale prices: 1) one well to Seagull Energy valued at $28,879.50, sold for $58,879.54; 2) two wells to Foundation Life valued at $18,049.75, sold for $25,088.68; 3) Greasy Creek wells valued at $524,950.58, sold for $972,479.84; and 4) Vastar sale wells valued at $401,733.35, sold for $423,336.59. The percentage by which each sale exceeded the value of the property was 104%, 39%, 85%, and 5%, respectively (averaging 58.25%).

■ ■ Obviously the four above-mentioned properties sold for more than the value of their engineered reserves. However, we cannot say that those sales created a reasonable basis for the chancellor to virtually take judicial notice that the value of the company's remaining reserves should be enhanced. There was no testimony at trial that, as a matter of custom or practice, the value of oil and gas properties is to be calculated by adding an enhanced value based on past sale prices. The chancellor, in using this enhanced value, did

not rely on any expert testimony or industry rule of thumb but simply decided, based on four prior sales, that Hoover's oil properties could be valued by adding 50% to the engineered value of their reserves. Even though the sales prices of the above four properties averaged 58% above their values, the actual range of variance is 5% to 104%. This indicates that while Hoover Oil's remaining wells may have some value in excess of their engineered reserves, it is pure speculation, given the evidence in this case, to say that if they are sold they will be worth 50% more. Predictability is favored over mere surmise in the valuation of marital property. *Grace v. Grace*, 326 Ark. 312, 930 S.W.2d 362 (1996).

■ ■ We acknowledge that our state's property division statute does not compel mathematical precision in property distribution but only requires that property be distributed equitably. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). Further, the chancellor is vested with a measure of flexibility in apportioning total assets, and the critical inquiry is how the total assets are divided. *Id.* However, the problem here is not the percentage distributed to each party but the erroneous calculation of the value of an asset assigned to appellant.

■ Because we find errors in the chancellor's division of marital property, we reverse and remand to allow the chancellor to redivide the property in light of the considerations expressed in this opinion. *See Grace v. Grace, supra*. Additionally, we reverse the alimony and child-support awards because the chancellor's awards and his calculation of appellant's income are likely to be affected in light of his redivision of property consistent with our decision.

Reversed and remanded.

BIRD and KOONCE, JJ., agree.