BART F. VIRDEN, Judge
Phyllis Johnson appeals from the Garland County Circuit Court order denying her request for alimony. On appeal, Phyllis argues that the circuit court failed to consider testimony and evidence regarding her need for alimony and her ex-husband's ability to pay. We affirm.
On February 16, 2017, after fifty-eight years of marriage, Phyllis Johnson filed a complaint for divorce from bed and board against Walter Johnson. Later, after Walter counterclaimed for divorce, Phyllis amended her complaint to a claim for absolute divorce.
The parties negotiated a partial settlement agreement that was entered on September 19, 2017. Phyllis received a total value of assets of $869,715 that included a Merrill Lynch IRA, a Merrill Lynch Roth IRA, three Bank of America accounts, the cash value of an insurance policy, the debt-free marital home and contents, a subdivision lot, her car, a pontoon boat, one-half of a State Farm insurance policy, and one-half of the "Harris" bank account. Walter received $827,193 in assets that included two Merrill Lynch IRA accounts, three Merrill Lynch "kids" accounts, an Arvest account, the cash value of the "MTL" insurance policy, the cash value of the Northwestern Mutual Whole Life policy minus the costs of funding the State Life policy,[1] a condominium in Chicago, two vehicles, one-half of the State Farm money-market account, one half of the Merrill Lynch CMAM account, and one-half of the "Harris" bank account. Phyllis received $7,000 of the cash value of the remaining Merrill Lynch IRA, and Walter received $110,000 of the cash value. Both parties retained any debt in their names. The parties reserved the issue of alimony for the court to decide.
The circuit court held a bench trial regarding the issue of alimony. At the trial, Phyllis testified that on October 31, 2015, Walter left her and began living with his girlfriend in her home where he does not pay rent or utilities. Phyllis testified that she had been a homemaker, a wife, and a mother from the time she and Walter married in 1957 until their separation. When the children left the home, Phyllis attended college part time and earned a bachelor's degree in accounting. Phyllis explained that she did not go to school with the intent of making a career out of her degree but simply to "have at least as much education as [her] children." In 1995, Phyllis obtained an associate degree in interior design and worked part time on *913 her own and for an interior-design firm. Phyllis testified that for the four to five years that she worked, she earned $20 an hour and divided her income into thirds: one-third for grandchildren, one-third for taxes, and one-third for spending money. Later Phyllis obtained certification as a Feldenkrais instructor, but she had not been "very successful" in this endeavor and had lost money on it. Phyllis testified that she receives $725 per month in social security benefits, which was her only income, and Walter receives $2,049 per month in social security benefits. Phyllis stated that she understood that she was eligible for an increase in the amount of social security benefits she receives. Phyllis testified that during the marriage, she used her inheritance to purchase and remodel their marital home, which she would not have done if she had known that Walter was going to leave her.
Phyllis submitted an affidavit of financial means showing $4,950.23 in monthly expenses, and she requested $4,000 in alimony to maintain her lifestyle. Phyllis asserted that Walter received a far greater monthly income, averaging around $8,725 according to the income tax returns from 2012 to 2016. Phyllis also argued that Walter had fewer expenses than she did and that he owned a condo in Chicago.
Walter testified that he was still paying the $800-a-month mortgage (plus $400 monthly POA due) on the Chicago condo and still owed around $52,000 on it. He explained that he planned to sell the condo and live off the proceeds. Walter described Phyllis's assets as "basically ... non-taxable" and estimated that "the balance would be $100,000 maybe $150,000 in her favor considering the tax vulnerability on the property items that are on my list." Walter testified that while they were married, their monthly expenses were in excess of $5,000 and that Phyllis's estimation of monthly expenses was reasonable. Walter explained that he did not think he and his girlfriend were going to break up, but if they did, he would have nowhere to live and would have to pay rent or a mortgage and utilities and related expenses. Walter did not provide a monthly budget, but he had previously stated that his monthly household expenses were around $840. At the hearing, he described various monthly expenses totaling around $2,600 including the condominium-related payments. He asserted that if he were required to pay the alimony Phyllis requested, "it would be skimpy for me," and he would have nothing left to leave the grandchildren.
After the hearing, the circuit court entered an order in which it found that the parties were married in 1957, Phyllis was seventy-eight years old, Walter was eighty-five years old, and they were both in good health. The circuit court found that the parties entered into a partial settlement agreement that divided their marital assets worth $1,696,908 and that Phyllis received $42,522 more than Walter. The circuit court found that each party received social security benefits but that neither party received income from a retirement plan or pension. The circuit court denied Phyllis's request for alimony, finding that "Plaintiff does not have a financial need for alimony. She negotiated a settlement with the Defendant giving her a greater amount of assets than Defendant and taking assets she wanted albeit less income producing than his."
Phyllis filed a timely notice of appeal. On appeal, Phyllis argues that the circuit court abused its discretion by not considering certain relevant factors in its denial of alimony.
Divorce cases are reviewed de novo. Webb v. Webb , 2014 Ark. App. 697, 450 S.W.3d 265. An award of alimony is not mandatory but is solely within the circuit court's discretion.
*914 Mitchell v. Mitchell , 61 Ark. App. 88, 964 S.W.2d 411 (1998) ; we will not reverse absent an abuse of that discretion. Cole v. Cole , 89 Ark. App. 134, 201 S.W.3d 21 (2005). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Foster v. Foster , 2015 Ark. App. 530, 472 S.W.3d 151.
The division of marital property and an award of alimony are complementary devices that may be utilized by the circuit court to make the dissolution of a marriage financially equitable. Webb , supra. The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. Kuchmas v. Kuchmas , 368 Ark. 43, 243 S.W.3d 270 (2006). The primary factors that a court should consider in awarding alimony are the financial need of one spouse and the other spouse's ability to pay. Gilliam v. Gilliam , 2010 Ark. App. 137, 374 S.W.3d 108. The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. Johnson v. Cotton-Johnson , 88 Ark. App. 67, 194 S.W.3d 806 (2004). We adhere to no mathematical formula or bright-line rule in awarding alimony. Valetutti v. Valetutti , 95 Ark. App. 83, 234 S.W.3d 338 (2006). In matters of alimony, the need for flexibility outweighs the corresponding need for relative certainty. Evtimov v. Milanova , 2009 Ark. App. 208, at 8-9, 300 S.W.3d 110, 116. Discretion and flexibility are critical to the circuit court's ability to make the dissolution of the marriage as equitable as possible. Id.
Phyllis cites Halk v. Halk , 2009 Ark. App. 803, in support of her argument that the circuit court did not consider her need for alimony and Walter's ability to pay. Similar to the instant case, Nelta and Jim Halk had been married for forty-five years, Nelta had been a homemaker, and the marital assets were divided roughly equally between the parties. Unlike the instant case, Nelta was chronically ill, had large medical expenses, did not have any monthly income, and could not pay for her expensive insurance. By contrast, Jim possessed a half-interest in three companies and was in good health. Our court reversed the circuit court's denial of alimony and held that
[a]ppellant's uncontradicted testimony was that for the duration of the marriage, she did not work at the insistence of appellee. Appellant indicated in her financial-means affidavit that she has no income. Furthermore, appellant has a medical condition that has resulted in substantial ongoing medical expenses. As noted above, the primary purpose of alimony is to rectify any imbalance in the parties' earning power and standard of living. Under the facts of this case, the denial of alimony to appellant was an abuse of discretion.
Id. at 4.
Here, the circuit court's assessment that Phyllis did not require alimony is supported by the evidence and testimony: Phyllis is in good health, does not have large medical expenses, receives social security benefits with the potential for an increased amount, and negotiated a settlement agreement for more than half of the marital assets.
Another important difference between Halk and the instant case is the circuit court's exercise of its discretion. In Halk , we found that "[i]n the decree, the circuit court simply denied appellant's request for alimony without any further explanation. Our review of the record indicates several factors that we are left to conclude were overlooked by the circuit court in deciding to deny appellant's request for alimony." Id. at 3-4. In the instant case, the circuit *915 court clearly considered the length of the marriage, the parties' age and relative health, the division of the property and the assets' earning potential, each party's monthly income, and Phyllis's financial need. We recently held in Trucks v. Trucks , 2015 Ark. App. 189, at 5, 459 S.W.3d 312, 316,
Although the facts of this case would arguably support the denial of an award of alimony if that had occurred, it is not our duty under our standard of review to simply substitute our judgment for that of the circuit court, which was in a far better position to judge the credibility of the witnesses. It is instead our duty to determine if the circuit court abused its discretion in making its findings regarding the award of alimony.
We cannot say that the circuit court abused its discretion in finding that Phyllis had no financial need for alimony.
Phyllis also argues that the circuit court erroneously failed to consider Walter's ability to pay alimony, specifically, she argues that the circuit court failed to consider the fact that Walter's girlfriend paid the mortgage and the utilities for the house in which they lived. She argues that in Craig v. Craig , 2010 Ark. App. 718, 379 S.W.3d 590, this court found that it was proper to consider expenses paid by the ex-husband's live-in girlfriend in determining his ability to pay. Here, the circuit court did not specifically acknowledge the testimony that Walter's girlfriend paid the mortgage and utilities; however, it did consider the economic balance between the parties. The circuit court found that Phyllis had chosen her greater share of marital assets, that neither party received a pension, and that both parties received social security benefits. At the trial, there was testimony that neither party had a mortgage or paid rent for the home in which they lived, that both parties were likely to have to draw on the principal of their assets to maintain the same standard of living they had before the divorce, and that the tax liability associated with Walter's assets was much greater than Phyllis's. The focus of the circuit court's order is the economic balance between the parties and Phyllis's lack of financial need for alimony, and in light of the testimony and evidence presented to the court, we cannot say that the circuit court's denial of alimony was made thoughtlessly and without due consideration.[2]
Though we might not have come to the same conclusion as the circuit court, under the specific facts of this case we find no error in the circuit court's determination that Phyllis does not have a financial need for alimony. An award of alimony, if one is awarded at all, is measured by the particular facts and circumstances of the parties before the circuit court. Whitworth v. Whitworth , 2009 Ark. App. 410, 319 S.W.3d 269. We are to determine only whether the alimony decision is reasonable under the circumstances. Id.
Affirmed.
Abramson and Hixson, JJ., agree.

During the marriage, the parties purchased a joint insurance policy intended to provide long-term care for both parties. The parties agreed that Walter would withdraw $185,000 from the Northwestern Mutual account and deposit the money into an interest-bearing account in both parties' names. The money would be used to pay the premiums on the long-term-care policy, and the parties would retain joint ownership of the policy.

On appeal, both Phyllis and Walter greatly expand the argument regarding Walter's deferred payment of income taxes. Through their testimony regarding the tax liability of the parties' assets, both parties peripherally touched on the issue of whether Walter was "consuming his estate" by making mandatory withdrawals or whether he was generating more income by reinvesting assets. The issue was not presented to the circuit court, and the record was not developed for our de novo review. This court will not consider arguments that are raised for the first time on appeal. See Taylor v. Taylor , 369 Ark. 31, 38, 250 S.W.3d 232, 238 (2007).