MIKE MURPHY, Judge
Keith and Lisa Karolchyck were married on September 22, 2007, and divorced by order of the Pulaski County Circuit Court on November 9, 2017. On appeal, Keith argues that the circuit court erred in awarding Lisa $20,000 from a down payment on a home (the Lonoke House), $1500 for money Keith allegedly spent on his girlfriend while Keith and Lisa were married, $580 in moving expenses, and $2000 for repairs on another house (the Sherwood House). He further argues the circuit court erred in awarding Lisa an amount to be determined for half the reduction of the debt on the Sherwood house, spousal support, and attorney's fees. We affirm in part and dismiss in part.
Our court reviews domestic-relations cases de novo on the record, but we *534 will not reverse the circuit court's findings unless they are clearly erroneous. Hunter v. Haunert , 101 Ark. App. 93, 270 S.W.3d 339 (2007). A circuit court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Id. In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the lower court abused its discretion by making a decision that was arbitrary or groundless. Skokos v. Skokos , 344 Ark. 420, 40 S.W.3d 768 (2001). We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. Kelly v. Kelly , 2011 Ark. 259, 381 S.W.3d 817.
I. The $20,000 Down Payment on the Lonoke House
Keith and Lisa purchased the Lonoke House in 2014. They purchased it for $179,000 and paid $35,068.53 at closing, $20,000 of which Lisa had taken from her inheritance from her father. Before closing, Lisa withdrew the $20,000 from an account in her name only where she kept her inheritance proceeds and deposited it into the couples' joint checking account. From that account, they wrote the check for the down payment. At the final hearing, Keith testified that he wanted to keep the house. The court found that the Lonoke House was marital property and awarded it to Keith, but it also ordered him to reimburse Lisa for half the equity in the home and $20,000 for the portion of the down payment that came from her inheritance. Keith argues that he should not have to reimburse Lisa the $20,000 because the money came from commingled funds and was thus marital property.
Any discussion of division of marital property should begin with the relevant statutory provision. Arkansas Code Annotated section 9-12-315 (Repl. 2015) defines "marital property" as "all property acquired by either spouse subsequent to the marriage," subject to certain exceptions. There is a presumption that all property acquired during a marriage is marital property. Id. Relevant exceptions to the statute, however, include "property acquired prior to marriage, or by gift, or by bequest, or by devise, or by descent"; and "property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent." Ark. Code Ann. § 9-12-315(b).
It is uncontroverted that Lisa's inheritance was her separate property. But Keith is correct that sometimes the nature of separate property may change to marital in the event commingling occurs. This result, however, occurs only when tracing the way nonmarital property and marital property have been commingled becomes so difficult as to be onerous. See Speer v. Speer , 18 Ark. App. 186, 191, 712 S.W.2d 659, 662 (1986). Here, there is no such difficulty. It is a well-settled rule that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property. McCormick v. McCormick , 2012 Ark. App. 318, at 6, 416 S.W.3d 770, 775. The two estates own such property by way of a sort of tenancy in common. Id. The mere pouring of nonmarital funds in and out of a joint checking account does not render them forever funds owned by the entirety. Jackson v. Jackson , 298 Ark. 60, 63-64, 765 S.W.2d 561, 562-63 (1989). We therefore affirm the trial court's ruling on this point.
*535 II. Money Spent on Paramour
Keith next argues that it was error for the circuit court to order him to reimburse Lisa for $1500 he allegedly spent on his girlfriend while he and Lisa were still married. At trial, Keith admitted using marital funds to purchase concert tickets for himself and his girlfriend totaling $283.55. He also admitted taking his girlfriend out for meals, going on trips with her during the marriage, and buying gifts for her children. The only receipts introduced, however, were the ones for the concert tickets. Lisa did testify that she and Keith used to go out to eat two or three times a week, and that the two of them would spend about $100 to $150 eating out, but during the hearing even the court acknowledged that Lisa was only speculating as to how much Keith spent on his girlfriend's meals.
It is permissible to have one spouse reimburse the other for improper expenses attributable to a paramour, and we have upheld decisions to do so. Bamburg v. Bamburg , 2011 Ark. App. 546, at 14-15, 386 S.W.3d 31, 40. But it is also axiomatic that one must present evidence to prove such an assertion. Id. Here, Keith argues that the $1500 sum was arrived at arbitrarily, and that it was therefore an abuse of discretion for the court to make such an award. However, in Bamburg , we affirmed despite any exacting calculation. There, the circuit court found the husband was entitled to $2500 in reimbursement "because some trips and entertainment were undeniable." Thus, like in Bamburg , because Keith admitted taking trips and spending money on his girlfriend and her children during the marriage, we cannot say that the circuit court clearly erred in ordering this amount of reimbursement.
III. Moving Expenses
At the hearing, Lisa testified that she moved out of the parties' marital home (the Lonoke House) and moved into the Sherwood House where she resided until they found a buyer for the Sherwood House. When she moved out of the Sherwood House, she incurred $580 in moving expenses. The circuit court ordered Keith to reimburse Lisa the full $580 in moving costs. Keith argues this is error because Lisa spent marital funds to move; thus, awarding her the full amount is an unequal distribution.
Keith's couching this allotment as an unequal division is error. Instead, the moving expenses are more akin to a marital debt. Although the division of marital debt is not addressed in Arkansas Code Annotated section 9-12-315, an allocation of the parties' debt is an essential item to be resolved in a divorce dispute. Ellis v. Ellis , 75 Ark. App. 173, 57 S.W.3d 220 (2001). A circuit court's decision to allocate debt in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. Boxley v. Boxley , 77 Ark. App. 136, 141-42, 73 S.W.3d 19, 23-24 (2002). Here, the circuit court reasoned that Lisa was entitled to the reimbursement of moving expenses because she had to move out of the marital home due to Keith's adultery. Later in the order, the court also provided a detailed discussion of Lisa's poor health and her upcoming needs. It did not clearly err on this point.
IV. Reduction of Debt and Repairs on Sherwood House
Keith's fourth and fifth points can be effectively addressed together. For the bulk of the parties' marriage they lived in the Sherwood House. Keith had purchased the house in 1999 during a previous marriage and maintained the property in his name after his divorce from his former wife. He refinanced the home in 2007 after he married Lisa. Even after the refinance, *536 he maintained the house solely in his name. Keith and Lisa made improvements to the Sherwood House during the marriage. Lisa testified that all the work "probably cost about $8000 and was paid for with joint funds." The court found that the Sherwood House was Keith's separate property but that Lisa was entitled to some financial compensation for the marital contributions toward the improvements ($2000) and any reduction of debt on the home.
Keith argues this was made in error because "there was no factual basis for the award of the alleged reduction of debt on a non-marital property paid for with alleged marital funds." We disagree. Here, the record demonstrates that Keith refinanced the Sherwood House in 2007 for $73,466 and, according to Keith's testimony, at the time of the hearing it was under contract to sell for $103,000. Keith further testified that after fees and commission they would receive roughly $89,000 from the sale and that about $59,000 is still owed on the note. Keith put on no evidence to demonstrate that the reduction in debt was not attributable to marital funds. Considering that a circuit court is given broad powers to distribute both nonmarital and marital property to achieve an equitable division, Smith v. Smith , 32 Ark. App. 175, 184, 798 S.W.2d 442, 447 (1990), and that a non-owning spouse is entitled to some benefit when marital funds have been used to pay off debts or make improvements on the owning spouse's nonmarital property, Box v. Box , 312 Ark. 550, 555, 557, 851 S.W.2d 437, 440, 441 (1993), we are not left with a definite and firm conviction that a mistake has been committed.
V. Spousal Support
As of the hearing, Keith was working as a restaurant manager in Little Rock making roughly $55,000 a year, and Lisa was a therapist for Baptist Hospital making roughly $58,000 a year. Lisa, however, has a chronic kidney disease that requires her to be on dialysis five times a week. At the hearing, she testified that she is on a wait list for a new kidney and anticipated receiving a transplant within the next year. She testified that once she receives a kidney transplant, she will spend between twelve weeks to six months recovering and will require full-time care. Lisa testified that her surgery will take place in Dallas at a significant cost to her, and her antirejection medicine can cost hundreds of dollars a month. Taking Lisa's health into consideration, as well as her short-term and long-term disability insurance and her current monthly expenses, the circuit court awarded her $500 a month for the next two years to support her financially through her transplant and recovery.
Keith contends this was error because he and Lisa make roughly the same amount of money and that the circuit court "did not appear to consider" the fact that Lisa was pursuing avenues to perform her job remotely, such as conferencing with patients via Skype.
Generally, the primary consideration in a decision to award alimony is the relationship between the needs of the payee spouse and the payor spouse's ability to pay. Trucks v. Trucks , 2015 Ark. App. 189, at 3, 459 S.W.3d 312, 314-15. An award of alimony lies within the discretion of the circuit court and will not be reversed absent an abuse of discretion. Id. There are secondary factors that may also be considered. Id. The factors include (1) the parties' financial circumstances; (2) the parties' past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the amount of income of each party that is spendable; (7)
*537 the earning ability and capacity to earn of the parties; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition of the homestead; (10) the respective health and medical needs of the parties; (11) duration of the marriage; and (12) the amount of child support. Id.
Regarding the primary factors, Lisa testified about her current monthly expenses and how those are likely to increase while she pursues her kidney transplant. She testified that even without considering her upcoming hospitalization and antirejection medication, she will still need an additional $500 a month to meet her regular expenses. Keith did not argue, either below or on appeal, that he does not have the ability to pay. Regarding the secondary factors, it is evident that the court relied heavily on factor ten, the respective health and medical needs of the parties, especially considering that the court awarded the alimony for only two years. The circuit court did not abuse its discretion in making this award.
VI. Attorney's Fees
Finally, Keith argues that the court erred in awarding Lisa her attorney's fees. In the divorce decree, the court invited both parties to submit petitions for attorney's fees. Lisa did so, and the court awarded her $1500 in an order dated December 21, 2017. Keith did not amend his notice of appeal to include the order for attorney's fees; therefore, we do not have jurisdiction to consider his arguments and dismiss this issue. Ark. R. App. P.-Civ. 4(b)(2).
Affirmed in part; dismissed in part.
Gruber, C.J., and Glover, J., agree.