Stanley testified that his tax returns are the best reflection of his income and that his income varies, leaving him without a specific biweekly amount. He asked that the trial court use his tax returns to determine his income. Stanley also introduced exhibits that listed both his credit card and IRS debts totaling more than $ 4000. He said that he owes $ 13,255.11 on his vehicle and claimed that his monthly net pay is $ 3,544.50. His affidavit of financial means reflected that his expenses are $ 5,045.96 a month.
The trial court issued its decree on April 23, 2018, and it states as follows:
4. PROPERTY. The Court finds the following distribution of property to be equitable:
The Plaintiff is awarded the following property: the residence at 411 North Oakley, the 2011 Cadillac CTS, the 2004 Pontiac Grand Prix, one-half (1/2) of Defendant's Union Pacific Retirement account, one-half (1/2) of her own Arkansas Public Employee Retirement System (APERS) account, and whatever funds presently exist in the parties' joint bank account.
The Defendant is awarded the following property: the 2011 Cadillac DTS, the 1994 Pontiac Grand Am, the GMC truck, the GMC Denali, the 2008 Suzuki Hayabusa Motorcycle, one-half (1/2) of his own Union Pacific Retirement account, one-half (1/2) of Plaintiff's APERS account, all of his ITW Retirement Account, and all of the cash he admitted to possessing and withholding from Plaintiff at and around the time of the separation which the Court finds would well exceed $ 6,000.00.
1. DEBTS. The Court makes the following debt distributions:
The Plaintiff shall be responsible for the following marital debts: Capital One ($ 1,584.06); IRS/2015 ($ 983.46); IRS/2016 ($ 1,200.00); JCPenney ($ 386.46); LAC Collections ($ 65.51); Best Buy ($ 1,521.72); TJ Max/Synchrony Bank ($ 607.21); RCA ($ 50.00); Fordyce Bank & Trust ($ 2,703.27); Discover Card ($ 1,337.17); Exxon ($ 326.45); Dr. Brotherton ($ 64.67); Jefferson Regional Medical Center ($ 232.00); Avenue ($ 354.05); Credit One ($ 1,827.85); Children's Place ($ 199.00); Midland Funding ($ 2,095.32); and GM Financial for the 2011 Cadillac CTS ($ 14,172.56).
The Defendant shall be responsible for the following marital debts: Sears Credit Card ($ 1,091.49); Best Buy ($ 1,158.00), IRS taxes owed for 2014, 2015, 2016, and 2017; debt on the 2011 Cadillac DTS (approximately $ 14,000.00); and other credit card debt in Defendant's name.
2. ALIMONY. The Court finds after considering the financial circumstances of both parties; the financial needs and obligations of both; the couple's past standard of living; the amount and nature of the income, both current and anticipated, of both husband and wife; the extent and nature of the resources and assets of each of the parties; the amount of income of each that is spendable, the amounts which, after entry of the decree, will be available to each of the parties for the payment of living expenses; the earning ability and capacity of both husband and wife; property awarded or given to one of the parties, either by the court or the other party; the disposition made of the homestead or jointly owned property; the relative *191 fault of the parties and their conduct, both before and after separation, in relation to the marital status, to each other and to the property of one or the other or both; and the duration of the marriage; that the Plaintiff should receive spousal support. Defendant shall pay the amount of $ 500.00 per month for a period of forty-eight (48) months at which time the support shall cease. Support shall cease earlier if the Plaintiff remarries prior to the conclusion of the forty-eight months.
Stanley's appeal timely followed.
II. Applicable Law and Standard of Review
Arkansas Code Annotated section 9-12-315(a) (Repl. 2015) provides:
At the time a divorce decree is entered:
(1)(A) All marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:
(i) The length of the marriage;
(ii) Age, health, and station in life of the parties;
(iii) Occupation of the parties;
(iv) Amount and sources of income;
(v) Vocational skills;
(vi) Employability;
(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and
(ix) The federal income tax consequences of the court's division of property.
(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter[.]
We review divorce cases de novo. Wyatt v. Wyatt , 2018 Ark. App. 177, 545 S.W.3d 796. In Steeland v. Steeland , 2018 Ark. App. 551, at 4-5, 562 S.W.3d 269, 273, we stated,
With respect to the division of property in a divorce case, we review the trial court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Brown v. Brown , 373 Ark. 333, 284 S.W.3d 17 (2008). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Jones v. Jones , 2014 Ark. 96, 432 S.W.3d 36.
Trial courts in traditional equity cases have broad powers to distribute the property in order to achieve an equitable division. Russell v. Russell , 2013 Ark. 372, 430 S.W.3d 15. The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets are divided. See Canady v. Canady , 290 Ark. 551, 721 S.W.2d 650 (1986). The overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable under the circumstances. Id.
Marital property cannot always be divided exactly equally and in kind. Jones, supra . Stated differently, the property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably.
*192 McCormick v. McCormick , 2012 Ark. App. 318, 416 S.W.3d 770 ; Coatney v. Coatney , 2010 Ark. App. 262, 377 S.W.3d 381. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. Jones, supra .
Although the division of marital debt is not addressed in Arkansas Code Annotated section 9-12-315, an allocation of the parties' debt is an essential issue to be resolved in a divorce dispute. Karolchyk v. Karolchyk , 2018 Ark. App. 555, 565 S.W.3d 531. The allocation of marital debt must be considered in the context of the distribution of all the parties' property. Boxley v. Boxley , 77 Ark. App. 136, 73 S.W.3d 19 (2002). However, section 9-12-315 and its presumption of equal division does not apply to the division of marital debts. Gilliam v. Gilliam , 2010 Ark. App. 137, 374 S.W.3d 108. There is no requirement that the marital debt be subtracted from the marital assets to determine the "net" value of the total award made to each party in all divorce cases. Id. A determination as to how debts should be allocated between the parties will not be reversed unless it is clearly erroneous. Id. Additionally, the court has broad powers to distribute property in order to achieve a distribution that is fair and equitable under the circumstances; it need not do so with mathematical precision. Coatney, supra .
In Chambers v. Chambers , 2017 Ark. App. 429, 527 S.W.3d 1, we held that property division and alimony are complementary devices that the trial court may utilize in combination to make the dissolution of marriage equitable. In Karolchyk , we stated,
Generally, the primary consideration in a decision to award alimony is the relationship between the needs of the payee spouse and the payor spouse's ability to pay. Trucks v. Trucks , 2015 Ark. App. 189, at 3, 459 S.W.3d 312, 314-15. An award of alimony lies within the discretion of the circuit court and will not be reversed absent an abuse of discretion. Id. There are secondary factors that may also be considered. Id. The factors include (1) the parties' financial circumstances; (2) the parties' past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the amount of income of each party that is spendable; (7) the earning ability and capacity to earn of the parties; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition of the homestead; (10) the respective health and medical needs of the parties; (11) duration of the marriage; and (12) the amount of child support. Id.
Karolchyk , 2018 Ark. App. 555, at 8, 565 S.W.3d at 536-37.
III. Division of Marital Property
Stanley argues that the trial court's division of marital property was clearly erroneous because it did not divide the marital property equally and that an unequal division of property was not supported by the evidence. Ark. Code Ann. § 9-12-315(a)(1)(A). He acknowledges that an equal distribution of marital debt is not mandated, and he urges that it be considered in the context of the distribution of all of the parties' property. Baker v. Baker , 2013 Ark. App. 543, 429 S.W.3d 389. Stanley complains that the trial court divided the marital property but did not state that the allocation of their debt was considered in the property division, nor did the court indicate that the division of property was an unequal distribution.
*193 Stanley asserts that Barbara's testimony regarding cash kept in his glove box and in his briefcase was contradicted by him, and he testified that Barbara had stolen some of the cash from his glove box in July 2015. He also testified that by the time the parties had separated in October 2015, he had spent all the money in the glove box, which he had kept there because of Barbara's "spending problems." Stanley argues that neither party presented credible testimony that he possessed a significant amount of cash at the time of their separation or divorce. Further, he contends that Barbara was not entitled to reimbursement for any nonconsensual transfer of marital funds made by him in the absence of proof of an intent to defraud. See Wainwright v. Merryman , 2014 Ark. App. 156. Thus, Stanley argues that the trial court committed reversible error by including the "hypothetical cash amount" in its division of property.
Stanley argues that his net property distribution equals $ 22,648 if the $6000 attributed to him is included in his award. He claims that Barbara's net distribution of property is $ 38,002.44. Thus, he contends that he was awarded far less.
He also contends that the trial court's debt division did not state that the debt distribution was made in accordance with the property division. He argues that Barbara was ordered to pay the Midland Funding debt, despite her having stated that the debt had been paid with proceeds from the Fordyce Bank & Trust loan. Therefore, he claims that the amount of debt attributed to Barbara is higher than the actual amount of her marital debt.
Stanley also complains that even though the divorce decree provides that he should be responsible for IRS taxes owed from 2014 through 2017, he owes an additional amount of $ 3,614.57-$ 1,914.57 for 2014-16 and $ 1700 for 2017. Stanley argues that much of Barbara's debt was accrued after the separation, and the resulting property related to the debt remained in her possession. He contends that given the amounts of his debt not listed and the allocation of marital debt to each party, Barbara received a larger property share than he did.
Stanley contends that the trial court allocated to each party his and her own debt and did not state how the allocation of marital debt factored into the court's award of marital assets. Accordingly, Stanley argues that the division of assets should be considered at face value. He contends that neither party requested an unequal division of marital assets or mentioned the factors to be considered in an unequal division of property. He argues that if the court intended to divide the assets equally, it erred in its calculations. If the court intended to make an unequal division, then it erred by awarding Barbara a larger share without sufficient evidence to support such a division. He asks that we reverse and remand to ensure an equal share of the marital assets for each party.
Barbara argues that the trial court did not err in dividing the marital property. We agree. Even though section 9-12-315 states that marital property "shall" be distributed equally, it is also true that the statute enables the trial court to make a division of property that is fair and equitable. See Hoover v. Hoover , 70 Ark. App. 215, 16 S.W.3d 560 (2000) (reversing a chancellor's property division that considered both assets and debts because of a miscalculation in the worth of assets).[2]
*194 The allocation of marital debt must be considered in the context of the distribution of all of the parties' property. Hackett v. Hackett , 278 Ark. 82, 643 S.W.2d 560 (1982). Here, the trial court divided the property and debt in an effort to make as equal an overall division of the marital estate as possible. Because mathematical precision is not required in the distribution of property, the critical inquiry is how the total assets are divided. Creson v. Creson , 53 Ark. App. 41, 917 S.W.2d 553 (1996). The overriding purpose of the property division statute is to enable the court to make a division that is fair and equitable under the circumstances. Steeland, supra .
Barbara was awarded $ 105,820 in assets (house $ 39,500; furnishings $ 1500; Cadillac CTS $ 8720; Grand Prix $ 3995; half of Stanley's retirement account $ 51,955; joint bank account $ 150). She contends that she was assigned $ 29,710.86 in debt, leaving her a net property award of $ 76,109.14. Stanley was awarded $ 90,853 in assets (Cadillac DTS $ 8,213; Grand Am $ 500; GMC truck $ 750; GMC Denali $ 5900; motorcycle $ 5470; half his retirement account $ 51,955; all of the ITW retirement account $ 12,065; cash $ 6000). Stanley was assigned $ 19,906.49 in debts, leaving him a net property value of $ 70,946.51.
She contends that the total net value of the estate is $ 147,056.24. Using this figure, Stanley's percentage share would be 48.24 percent, more or less. We note that if he had more than $ 6000 cash, which the trial court described as likely, the value of his share would increase. Mathematical precision is not required; thus, this should not be considered an unequal-distribution case. See Jones v. Jones , 2014 Ark. 96, 432 S.W.3d 36 (courts given flexibility because marital property cannot always be equally divided).
Stanley replies that Barbara's net-property argument is an attempt to classify an unequal distribution of marital property as an equal distribution. He argues that Arkansas law does not compel an equal division of marital debt, Baker , 2013 Ark. App. 543, at 6, 429 S.W.3d at 394, and that section 9-12-315 mandates either an equal division of marital property or a sufficient explanation for an unequal division of the property. Stanley argues that the inclusion of the parties' debts in a mathematical calculation is simply erroneous and that the property division by the trial court was not close to an equal division.
He is wrong on both counts. As set forth above, it is not improper to consider both assets and debts when dividing marital property. See Williams, supra. Further, mathematical precision is not required. See Coatney, supra. Stanley argues that if the court had intended for the debt distributions to justify an unequal division of the property, then section 9-12-315 required listing the existence and amounts of the parties' liabilities as a justification for an unequal distribution. This argument ignores the trial court's obligation to consider the debts in the context of the distribution of all of the parties' property. Based on our de novo review, we cannot say that the debt division was clearly erroneous or *195 that the trial court clearly erred in dividing the parties' marital property.
IV. Statement of Basis for Unequal Division
Stanley contends that the trial court failed to include its bases and reasons for not dividing the marital property equally as is required under section 9-12-315(a)(1)(B). Because we have determined that the trial court did not make an unequal distribution, a statement by the trial court for doing so is not required.
V. Alimony
Stanley contends that the alimony award to Barbara of $ 500 a month for four years was based on
the financial circumstances of the parties; the financial needs and obligations of both; the couple's past standard of living; the amount and nature of the income, both current and anticipated, of both husband and wife; the extent and nature of the resources and assets of each of the parties; the amount of income of each that is spendable, the amounts which, after entry of the decree, will be available to each of the parties for the payment of living expenses; the earning ability and capacity of both husband and wife; property awarded or given to one of the parties, either by the court or the other party; the disposition of the homestead or jointly owned property; the relative fault of the parties and their conduct, both before and after separation, in relation to the marital status, to each other and to the property of one or the other or both; and the duration of the marriage.
Stanley claims that the divorce decree did not mention the need to rectify any economic imbalance or the primary factors of the ability to pay and the need for support. He also contends that the trial court erroneously considered the fault of the parties. The ground alleged was eighteen months' separation, and only Stanley asserted fault by stating that Barbara had a spending problem and a drinking problem. Thus, Stanley argues that Barbara presented no evidence that his conduct related to her "need for support or ability to pay." He contends that it was clearly erroneous for the trial court to rely on this factor.
Further, he alleges that the trial court's failure to include the primary factors of "need" and "ability to pay" amounts to reversible error. He claims that the award of alimony was clearly a mistake of fact, as the evidence did not support those factors. He contends that including his per diem allowance in his disposable income was not supported by the testimony and evidence because his per diem is used to offset his expenses. Further, he argues that his monthly debt service should have been considered in the calculation of his ability to pay alimony.
Stanley contends that Barbara was in a much better position when she left the marriage than when she entered it. She maintained the same job; however, she left with a residence paid in full. He contends that the decree does not contain any finding regarding his monthly income or expenses. He claims that Barbara argued that his per diem awards should be classified as income and that his monthly income is $ 6,148.84. He contends that his income does not include the per diem award and that he averaged $ 3,544.50 a month without considering his per diem allowance. He argues that under either scenario, he does not have the ability to pay $ 500 a month after payment of his monthly expenses and debt totaling $ 5,857.27, "much less have any extra income to establish a savings of any sort, or to accumulate property."
*196 Barbara contends that the trial court's consideration of the financial circumstances of both parties and the financial needs and obligations of both parties is the same as the "ability to pay" and recognition that she has a "need." We agree. Stanley's ability to pay was evidenced by his 2017 pay stub that reflected earnings of $ 6,148.84 a month for the first eight months of 2017. Stanley testified that the expenses not reimbursed by his per diem payments were $ 3945 a month, rather than $ 5,045.86. The trial court considered eleven factors in deciding that alimony was warranted, and the $ 500 awarded to Barbara was half of what she had asked for. Accordingly, we hold that the trial court did not abuse its discretion in awarding alimony.
Affirmed.
Murphy and Brown, JJ., agree.

This court later discussed the distribution of property in Hoover as follows:
A close reading of Hoover shows that we based our reversal not on the percentage distributed to each party but instead on the erroneous calculation of the value of an asset assigned to the appellant. Therefore, Hoover does not stand for the proposition that the marital debt must be subtracted from the marital assets to determine the "net" value of the total award made to each party in all divorce cases. Although the chancellor in Hoover used this method, and we followed his methodology, the methodology itself was not in issue. Accordingly, we hold that the assignment of these debts to appellant did not constitute an unequal distribution of the marital property.
Williams v. Williams , 82 Ark. App. 294, 310, 108 S.W.3d 629, 639 (2003).