Cite as 2021 Ark. App. 394

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-578

| | | |
|---|---|---|
| JANICE K. VAUGHN | | **Opinion Delivered** October 20, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE PIKE COUNTY |
| V. | | CIRCUIT COURT |
| | | [NO. 55DR-19-46] |
| MICHAEL S. VAUGHN | | |
| | APPELLEE | HONORABLE TOM W. COOPER, JUDGE |
| | | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Janice K. Vaughn and appellee Michael "Mike" S. Vaughn were divorced by a June 2020 decree. Janice appeals the following findings made by the circuit court: (1) the amount she was entitled to receive as her portion of Mike's IRA, (2) the valuation of the two vehicles she was awarded, and (3) the denial of alimony. We affirm.

The parties were married for almost eighteen years. They separated in May 2019 when both parties were in their fifties. Mike worked for his family's company, Glenwood Ready Mix, earning approximately $109,000 annually. Janice had been unemployed for years, but she received approximately $11,760 annually in disability benefits. Pending divorce, Mike paid the $678 monthly mortgage on the marital home, paid for Janice's health and automobile insurance, and paid Janice $395 a week on the weeks he did not pay the mortgage.

Janice reserved the right to request an unequal division of marital assets and debts in her favor, and she requested permanent spousal support based on the disparity in their incomes and earning capacities. Mike requested an unequal division of marital assets and debts in his favor.

At the June 2020 divorce bench trial, Mike presented evidence to support his belief that Janice was a compulsive gambler and could be considered a compulsive shopper, most of which she kept hidden from him during their marriage. Mike owned an interest in Glenwood Ready Mix, which was as a non-marital asset. According to Mike, in the months leading up to their separation, Janice had taken over $72,000 out of the business account and had spent approximately $24,400 from refinancing the marital home. Mike said he did not realize Janice was taking all that money from his family's business, and he never saw any of the proceeds from the refinance. She also ran up approximately $75,000 in credit-card debt in those few months. Glenwood's bookkeeper identified a plethora of non-business expenditures and unaccounted-for funds between mid-2017 and mid-2019. Mike attributed more than $100,000 of that to Janice's actions. The credit-card companies ultimately returned $48,000 to Mike, which was put back into the business account.

The parties had a certificate of deposit worth $20,000 and owned an Infinity SUV valued at $40,000. During the marriage, the parties also bought a Ford F-150 truck for $8,000, which Janice sold for $1,200 before the divorce hearing because she "needed the money." As to the remaining various personal items and personal property, the parties agreed to a distribution.

Janice wanted spousal support from Mike, stating that she was disabled, whereas Mike was employed in his family's business and had approximately $7,800 a month in spendable income. Janice claimed that they had lived a modest lifestyle, and she should be supported with monthly alimony. She explained some of the marital debt by saying she bought food for them, and she bought herself and Mike "lots and lots of clothes." Janice said she paid for hotels, plane tickets, and cruise charges, among other things, with money from Mike's business, but those expenses were paid with his knowledge and consent. Janice had an adjusted gross income of $77,000 in 2019 from gambling although her taxable income that year was approximately $20,000.

Mike testified that Janice could work at a sedentary job, especially since she was able to sit in various casinos and play slot machines for hours at a time. According to Mike, Janice was able to load, unload, and operate a boat, fish for hours at a time, and camp for weeks at a time. He said Janice "ran a flower business" after she had been declared disabled, and when they bought the Infinity SUV, she was offered a job selling cars "on the spot."

The parties submitted a joint exhibit establishing that Mike had a Charles Schwab IRA, and its value in June 2019 was $131,037.08. Mike had had the IRA for many years before they married, but he did not present evidence to establish which part was nonmarital versus marital, so he stipulated that the IRA was a marital asset. Mike incurred taxes and penalties that he had not yet paid for having withdrawn $75,000 from the IRA to pay off the credit-card debt Janice incurred. He said the IRA currently had a value somewhere around $65,000.

3

The circuit court granted Mike a divorce from Janice. The circuit court unequally divided the value of the marital home due to the disparity in the parties' income and based on Arkansas Code Annotated section 9-12-315 (the statutory factors to consider in dividing marital property equitably). The marital home was to be sold and the net proceeds unequally divided in Janice's favor, 70 percent to Janice and 30 percent to Mike. Mike was also ordered to pay the monthly mortgage for up to six months following the divorce until it sold. The court found that Janice had incurred $75,000 in marital debt, but Mike paid the $75,000 debt in full after they separated, "resulting in a benefit to [Janice]."

The circuit court awarded Mike the entire value of the IRA. The circuit court found that the IRA held a marital value of $75,000. Each party would be entitled to one half, $37,500. However, Mike had paid off $75,000 in marital debt during the marriage, and Janice owed Mike her half ($37,500 in marital debt). For this reason, the circuit court awarded Mike the IRA to provide an even distribution, stating that "it kind of washes out[.]"

The circuit court found that "a portion of the monies fraudulently taken from [Mike] was repaid by the credit card companies in the amount of $48,000." The circuit court decided to "offset" the $48,000 that Mike was repaid by awarding Janice "the Infinity Vehicle valued at $40,000 and the truck purchased during the marriage for $8,000." The circuit court ordered that the $20,000 CD be evenly divided and that each party pay their own attorney's fees. The circuit court found that Janice was disabled but capable of working a sedentary job. The court further found that Janice "spent and gambled an unreasonable

4

amount of marital and non-marital funds." The circuit court denied Janice's request for spousal support.

Janice appeals the circuit court's divorce decree. On appeal, we review domestic-relations cases de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Cherry v. Cherry*, 2021 Ark. 49, 617 S.W.3d 692. "Clearly erroneous" means that the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.*

The circuit court in a divorce case has broad powers to distribute the property to achieve an equitable division. *Russell v. Russell*, 2013 Ark. 372, 430 S.W.3d 15. The circuit court is vested with a measure of flexibility in apportioning the marital assets, and the critical inquiry is how the total assets are divided. *Banks v. Banks*, 2019 Ark. App. 166, 574 S.W.3d 187. The overriding purpose of the property-division statute, Arkansas Code Annotated section 9-12-315, is to enable the court to make a division that is fair and equitable; the statute does not compel mathematical precision in the distribution of property. *Id.* Allocation of the parties' debt is an essential issue to be resolved in a divorce dispute and must be considered in the context of the overall distribution of the parties' property, but the statutory presumption of equal division does not apply to the division of marital debts. *Id.* We will not substitute our judgment on appeal as to the exact interest each party should have or what debt each party should be responsible for; we will decide only whether the order is clearly wrong. *Id.*

Property division and alimony are complementary devices that the circuit court may utilize in combination to make the dissolution of marriage equitable. *Johnson v. Johnson*,

2018 Ark. App. 308, 550 S.W.3d 911. An award of alimony is not mandatory but rather lies within the discretion of the circuit court and will not be reversed absent an abuse of discretion. *Id.* The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts of each case. *Id.* The primary factors to consider are the financial needs of one party and the ability of the other party to pay; secondary factors may also be considered.[1] *Id.* Discretion and flexibility are critical to the circuit court's ability to make the dissolution of the marriage as equitable as possible. *Id.*

In our de novo review of this record, we hold that Janice has not demonstrated that the circuit court clearly erred or abused its discretion. The circuit court's overall division of marital assets and debts was made as evenly as possible, although the court favored Janice in the distribution of the sale proceeds of the marital home. The circuit court did not abuse its discretion in denying Janice spousal support; there was evidence to support that she was able to work a sedentary job and support herself in a modest lifestyle. We will explain our decision as to each of Janice's arguments on appeal.

First, Janice contends that the circuit court erred by not dividing the value of Mike's IRA, which she contends was entirely marital, as of the date of the divorce. Mike did not, and does not, dispute that the IRA was entirely marital, and the circuit court treated it as

---

[1]The secondary factors may include (1) the parties' financial circumstances; (2) the parties' past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the amount of income of each party that is spendable; (7) the earning ability and capacity to earn of the parties; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition of the homestead; (10) the respective health and medical needs of the parties; (11) duration of the marriage; and (12) the amount of child support, if any. *See Cherry, supra.*

6

such. The circuit court determined that the IRA's marital value was $75,000. This was higher than the amount that Mike testified it was currently worth; in his estimation, the IRA was presently valued at about $65,000. Half of the $75,000 value would be $37,500, Janice's half of the value of the IRA. We see no error in the circuit court's determination of the value of the IRA given the evidence of its value at the time of their divorce. The circuit court offset Janice's one-half of the IRA's value by Mike's having paid off the $75,000 marital debt in full, half of which Janice owed as her part of the marital debt. The circuit court's finding that Janice's half of the IRA's value was offset by what she owed as her half of the marital debt is an equitable distribution and not clearly erroneous.

Next, Janice contends that the circuit court erred in its valuation of the two marital vehicles she was awarded. The circuit court's award to her was designed to offset the $48,000 that the credit-card companies paid back to Mike on marital debt. She takes no issue with the $40,000 value attributed to the SUV, but she does take issue with the circuit court assessing the truck's value at $8,000, the full purchase price. Janice asserts that the actual value of the truck was the fair market value, which she believes is the $1,200 she received when she sold it. In sum, Janice argues that she was awarded only $41,200 in marital assets and not the $48,000 she was supposed to receive, meaning she was "shorted" $6,800. We disagree that Janice has demonstrated clear error.

The property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Banks*, *supra*. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Id*. In this case,

the circuit court did not have to accept Janice's opinion that the truck was worth only $1,200. Moreover, marital property cannot always be divided exactly equally and in kind. *Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36. It is worth noting, too, that dissipation by one party can be considered by a circuit judge in making an unequal distribution of marital property. *See Freeman v. Freeman*, 2013 Ark. App. 693, 430 S.W.3d 824. On de novo review of this record, we not left with a distinct and firm conviction that the overall distribution of assets is clearly wrong.

Last, Janice argues that the circuit court abused its discretion by not awarding her $1,965 in monthly support for a reasonable amount of time. Janice contends that this is the amount Mike paid to support her pending the divorce and should continue. We disagree that she has demonstrated reversible error.

Mike has the ability to pay alimony, and this was a marriage that lasted almost eighteen years. The real issue is whether the circuit court abused its discretion in finding that Janice could work and was not entitled to receive alimony. We defer to the circuit court's credibility determinations and superior position to view the parties' needs with respect to alimony. *Symanietz v. Symanietz*, 2021 Ark. 75, 620 S.W.3d 518. The circuit court found that Janice has the ability to perform a sedentary job. This is not clearly erroneous. By her own testimony, Janice had earned income through gambling and received a disability check every month. In addition, there was evidence at trial to support that Janice was able to fish, camp, handle a boat, travel, and gamble, all for extensive periods of time. Mike testified that Janice had worked after she was declared disabled, and she had been offered a job selling cars.

Furthermore, alimony and property divisions are complementary devices that a circuit court employs to make the dissolution of a marriage as equitable as possible. *Chekuri v. Nekkalapudi*, 2019 Ark. App. 221, 575 S.W.3d 572. Janice was awarded approximately half of the marital assets and 70 percent of the net proceeds from the sale of the marital home; Mike was ordered to continue paying the mortgage for up to six months following the divorce; and Janice was spared being held solely responsible for a greater amount of the marital debt she incurred.[2] We will not reverse the circuit court's decision about alimony absent an abuse of discretion, and Janice has failed to demonstrate an abuse of the circuit court's discretion.

Affirmed.

HARRISON, C.J., and BARRETT, J., agree.

*Hilburn & Harper, Ltd.*, by: *Sam Hilburn* and *SaraCate Moery*, for appellant.

*Jana Bradford*, for appellee.

---

[2]In her brief on appeal, Janice purports to describe the amount she and Mike received in net proceeds from the sale of the marital home after the divorce. These figures, however, are not properly before us because they are outside the appellate record.